**UNITED STATES BANKRUPTCY COURT**
**DISTRICT OF MAINE**

| | |
|---|---|
| In re: ) | |
| ) | |
| Mona Knowles, ) | Chapter 13 |
| ) | Case No. 05-13492 |
| Debtor ) | |
| _____ ) | |
| ) | |
| Mona Knowles, ) | |
| ) | |
| Plaintiff ) | Adv. Proc. No. 08-1020 |
| ) | |
| v. ) | |
| ) | |
| Bayview Loan Serving LLC, ) | |
| ) | |
| Defendant ) | |
| _____ ) | |

**MEMORANDUM OF DECISION**

In this adversary proceeding, the Debtor ("Knowles") brought a four-count complaint against Defendant ("Bayview"). Bayview is the servicing agent for Wachovia Bank, N. A., holder of the mortgage on the Debtor's residence.[1] Two counts of the complaint were disposed of on summary judgment, leaving the two remaining counts of the complaint for trial. For the reasons set forth below, judgment will enter for Bayview. This memorandum contains the court's findings of fact and conclusions of law pursuant to FED. R. BANKR. P. 7052.

BACKGROUND

The Debtor filed her Chapter 13 case in October of 2005, just prior to the effective date of BAPCPA. The deadline for non-governmental entities to file proofs of claim was March 13,

---

[1] While papers filed in this adversary proceeding and the main case sometimes refer to Wachovia and/or Bayview interchangeably, the Defendant will hereinafter be referred to as Bayview because it was the party with whom the Debtor dealt.

2006. Bayview filed a timely proof of claim on November 9, 2005. That proof of claim reflected a reinstatement balance consisting of 3 monthly payments of $519.74, 5 monthly payments of $842.00, and various other charges, primarily escrow advances and bankruptcy and foreclosure attorneys fees. The proof of claim recited that the total unpaid principal ($44,686.88) plus reinstatement balance ($9,273.39) was $53,960.27. Bayview amended its proof of claim on March 15, 2006. The amended proof of claim revised the prepetition monthly payment arrears (8 months at $510 per month). The escrow advances and bankruptcy and foreclosure attorneys fee were also adjusted, and the total unpaid principal plus reinstatement was $54,085.27, an increase of $125 over the first proof of claim. That increase was attributable to Bayview's attorney charging $125 to file a proof of claim.

       The Debtor's original plan proposed that the Debtor would pay directly to Bayview post-petition monthly payments of $519.20. The mortgage arrears of $8,802 were to be paid through the plan. The plan further provided that the holders of unsecured claims, estimated at $33,504, would receive a dividend of 11%. Bayview objected to that plan on the basis that mortgage arrears were $9,273.39, rather than the $8,802 proposed by the plan. It also moved for relief from stay, claiming that the Debtor had failed to make three post-petition mortgage payments. To resolve that dispute, the parties agreed to an adequate protection order. It required the Debtor to pay $1,020, representing two months of post-petition payments, as part of the post-petition secured claim. It also required that all future post-petition monthly payments of $510 would be paid on time and in full. The Debtor promptly filed an amended Chapter 13 plan which proposed that she would continue making mortgage payments of $519.20 to Bayview and that the arrearage of $9,273.39 would be paid through the plan. Unsecured creditors would still

receive a dividend of about 11%. The amended Chapter 13 plan was confirmed on June 12, 2006 without objection.

The Debtor's house was destroyed by fire in November of 2007. At the end of 2007, Bayview sent the Debtor an "Annual Tax and Interest Statement" showing that the Debtor's principal loan balance to be $39,484.72, with a negative escrow balance of $3,018.26.[2] At the request of the Debtor's attorney, Bayview sent to Debtor's attorney a payoff balance dated February 28, 2008 showing $47,008.38 due and another one dated April 24, 2008 showing $47,826.21 due. Both statements said: "Please remit a Wire Transfer or Cashiers Check payable to Bayview Loan Servicing, LLC and/or mail to the address listed below." Each payoff balance also stated, "If the loan is in Foreclosure or Bankruptcy, you must obtain an amended payoff statement for updated fees prior to escrow closing."

After the house fire, the Debtor received a check for the insurance coverage on the house, in the amount of $209,996.00.[3] The check named several parties as joint payees, including the Debtor and Bayview.[4] When the Debtor and Bayview failed to reach an agreement on the amount due Bayview, the Debtor filed a motion to compel Bayview to endorse the insurance check. Again, the parties resolved their dispute with a consent order. This one required that Bayview be paid $42,500.00 from the insurance proceeds and that $6,125.91 be held in escrow

---

[2] We understand this figure to represent real estates taxes on the Debtor's residence paid by Bayview.

[3] The house was valued at $60,000 on the Debtor's schedule A.

[4] No evidence was presented concerning the time frame when Bayview learned that the house was destroyed by fire.

pending a determination of any additional balance due.[5]

The Debtor commenced this adversary proceeding in 2008. The complaint alleged violation of the Real Estate Settlement Procedures Act, 12 U.S.C. § 2602 (Count I ); violation of the automatic stay, 11 U.S.C. § 362(a)(3) (Count II); liability pursuant to 11 U.S.C. §§105 and 1327 (Count III); and negligent infliction of emotional distress (Count IV). The parties agree that the action is a core matter on which this court may enter final judgment.

Competing motions for summary judgment were filed. The court granted Bayview summary judgment on Count I, finding that the loan was originated by private individuals and was therefore not a "federally related mortgage loan" within the meaning of 12 U.S.C. §2602.[6] Bayview was also granted summary judgment on Count IV because the Debtor had failed "to make a showing sufficient to establish the existence of an element essential to that party's case . . . ." Celotex Corp. v. Catrett, 477 U.S. 316, 322 (1986); namely, that Bayview had caused her emotional distress. That summary judgment determination left Counts II and III for trial. The Debtor's summary judgment motion was denied in its entirety.

The Debtor sought review of the summary judgment results in the Bankruptcy Appellate

---

[5] The distribution of the remaining roughly $160,000 of insurance proceeds is not at issue in this adversary proceeding. The Debtor testified at the evidentiary hearing that she used slightly more than $100,000 to buy a house. The issue of whether she exceeded her $60,000 residence exemption is not before the court at this time.

[6] The issue was whether the private individuals originating the mortgage were "a 'creditor,' as defined in section 1602(f) of title 15, who makes or invests in residential real estate loans aggregating more than $1,000,000 per year." 12 U.S.C. § 2602(1)(B)(iv). The court found that the Debtor had not met her burden of showing that the originators of this mortgage met the statutory definition.

Panel for the First Circuit. Her appeal was dismissed because the summary judgment was an interlocutory order. The Debtor also failed to show cause why the B.A.P. should have exercised its discretion to review an interlocutory order.[7]

The two remaining counts of the complaint relate to the charges for attorneys fees and other charges assessed by Bayview. The Debtor asserts that Bayview violated the automatic stay and the confirmation order by assessing such fees. An evidentiary hearing was held.[8] The Debtor and Bayview each presented evidence concerning the amounts due under the mortgage. The Debtor also testified that she was damaged by being forced to pay electrical bills for a rental property as well as for the replacement house she purchased.

The Debtor has filed a motion to allow and disallow claims under District of Maine Local Bankruptcy Rule 3015-3(d)(3).[9] Determination of that motion has been postponed, with the agreement of the parties, until this adversary proceeding has been resolved.

---

[7] When the Debtor brought the appeal, she included in the record on appeal a transcript of the summary judgment hearing. That transcript was abbreviated due to technical problems with the court's electronic recording equipment. The actual hearing lasted for another approximately 30 minutes beyond what is included in the transcript.

[8] The Chapter 13 trustee did not participate in that hearing.

[9] That Rule provides:

> The trustee may pay allowed secured and priority claims as filed pursuant to a confirmed plan unless an objection to such claim is pending. After the last date for filing claims, the debtor or the trustee shall file a motion to allow and disallow claims. Such motion may also address objections to claims, priority of claims, the avoidability of liens, and any other matter which may be raised pursuant to statute or rule. Payment of general unsecured claims shall be made only after the order allowing and disallowing claims except as otherwise authorized by order of Court. The motion(s) and order(s) shall comport with Maine Bankruptcy Forms 3 and 4 in substance and form.

DISCUSSION

I.     Violation of the Automatic Stay

Count II of the complaint, as clarified at the evidentiary hearing, asserts that Bayview violated the automatic stay in its proofs of claim, its tax statement, and its payoff statements. Specifically, those documents allegedly contained attorneys fees and other charges that had not previously been assessed or approved.

> The automatic stay of §362 prevents creditors from taking certain actions against debtors.
>
> The automatic stay is one of the fundamental protections that the Bankruptcy Code affords to debtors. As its name suggests, the stay springs into effect upon the filing of a bankruptcy petition. . . . The stay effectively suspends all collection efforts (including foreclosures), thus giving the debtor breathing room. . . . The automatic stay remains in effect unless and until a federal court either disposes of the underlying case . . . or grants relief to a particular creditor.

Jamo v. Katahdin Federal Credit Union (In re Jamo), 283 F.3d 392, 398 (1st Cir. 2002). See also, Soares v. Brockton Credit Union (In re Soares), 107 F. 3d 969, 975 (1st Cir. 1997). "An individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C § 362(h). A willful violation does not require a specific intent to violate the automatic stay; it requires knowledge of the stay and that the defendant intended the actions which constituted the violation. See Fleet Mortgage Group v. Kaneb, 196 F.3d 265, 269 (1st Cir. 1999).

The particular provision at issue in this adversary proceeding is the prohibition of creditors from taking "any act to obtain possession of property of the estate . . ." 11 U.S.C. §362(a)(3). Each of the alleged violations of the automatic stay is addressed in turn.

A.     Proofs of claim

The filing of the proofs of claim does not violate the automatic stay for several reasons. The filing of a proof of claim is not an attempt to collect property of the estate or of the debtor. It merely indicates that the creditor wishes to share in the distribution process. See 11 U.S.C. §501. An objection to a claim may be filed, and a court will determine whether the claim should be allowed. See 11 U.S.C. §502. It is not the filing of the proofs of claim that concerns the Debtor, however, but the charges assessed within those proofs.

Much time during the evidentiary hearing in this adversary proceeding was consumed with testimony concerning the difference among the amounts contained in Bayview's proofs of claim and the payoff balances it provided at the Debtor's request. The proofs of claim identified the principal balance due under the mortgage as of the filing date, plus prepetition arrears. The payoff statements presented the amounts claimed to be due as of particular post-petition dates. The accuracy of those amounts is not currently at issue, because the parties reserved determination of the amount of Bayview's claim for the motion to allow and disallow claims.

B. Tax statement

The tax statement sent by Bayview was not an attempt to collect property. Such statements are sent in the normal course of business of the mortgagee to inform the mortgagor of the amount of interest paid during the year for tax purposes. To the extent that the Debtor objects to the information contained in the tax statement, she will have the opportunity to challenge that information in the context of the motion to allow and disallow claims.

C. Payoff statements

The two payoff statements were not attempts to collect property. It is undisputed that the payoff statements were sent at the Debtor's request. While they each stated that payment should

be remitted to Bayview, they also qualified the request with respect to loans in foreclosure or bankruptcy, stating that, "If the loan is in Foreclosure or Bankruptcy, you must obtain an amended payoff statement for updated fees prior to escrow closing." A debtor cannot ask for a payoff statement, and then claim that the sending of the requested information constitutes a violation of the automatic stay.[10]

The court concludes that the filing or delivery of the proofs of claim, the tax statement, or the payoff balances did not violate the automatic stay. Again, the accuracy of information contained within any of those statements is not at issue here, the amount of Bayview's claim having been reserved by the confirmation order.

II.   Finality of order confirming Chapter 13 plan

Count III contends that Bayview is bound by confirmation of the plan, and may not assess other fees against the Debtor. It is well-established that an order confirming a Chapter 13 plan is a final order,[11] see Matter of Torres Lopez, 138 B.R. 348, 349 (D. P.R. 1992), and that parties are bound by the terms of a confirmed plan. See Factors Funding Co. v. Fili (In re Fili), 257 B.R. 370, 373 (B.A.P. 1st Cir. 2001).

However, the finality of a confirmation order in Maine may differ from that general rule. As noted above, Local Rule 3015-3(d)(3) postpones determination of claims until after the claims deadline has passed. Consistent with that Local Rule, the order confirming the Debtor's amended

---

[10] An action which is otherwise lawful under state law may still be objectively coercive. See Pratt v. GMAC (In re Pratt), 464 F.3d 14, 19 (1st Cir. 2006)(holding that objectively coercive conduct by a secured creditor violated the discharge injunction). There was no objectively coercive action in this case.

[11] A decision is considered final if it "ends the litigation on the merits and leaves nothing for the court to do but execute the judgment." Fleet Data Processing Corp. v. Branch (In re Bank of New England Corp.), 218 B.R. 643, 646 (B.A.P. 1st Cir. 1998).

8

plan provided that confirmation was:

> [S]ubject to (i) resolution of actions to determine the avoidability, priority, or extent of liens, (ii) resolution of all disputes over the amount and allowance of claims entitled to priority under Sec. 507, (iii) resolution of actions to determine the allowed amount of secured claims under Sec. 506, and (iv) resolution of all objections to claims.

Thus, in this instance, the order confirming the plan was not a final order because it reserved the determination of claims. Nonetheless, the arrearage amount contained in Bayview's claim and incorporated into the amended plan is fixed and final because it reflects the understanding of the parties. The Debtor's contention that Bayview is prohibited by the plan from assessing other post-filing fees or charges is rejected.

The Debtor has failed to carry her burden of showing that any action taken by Bayview violated either the automatic stay or the confirmation order. Finding no violation, there is no need to consider damages asserted by the Debtor. Judgment will enter for Bayview. A separate order shall issue.

DATED: April 9, 2010

_____
Louis H. Kornreich, Chief Judge
United States Bankruptcy Court