**FOR PUBLICATION**

# UNITED STATES BANKRUPTCY APPELLATE PANEL
# FOR THE FIRST CIRCUIT

_____

### BAP NO. EB 10-022

_____

**Bankruptcy Case No. 05-13492-LHK**
**Adversary Proceeding No. 08-01020-LHK**

_____

**MONA LISA KNOWLES,**
**Debtor.**

_____

**MONA LISA KNOWLES,**
**Plaintiff-Appellant,**

v.

**BAYVIEW LOAN SERVICING, LLC,**
**Defendant-Appellee.**

_____

**Appeal from the United States Bankruptcy Court**
**for the District of Maine**
**(Hon. Louis H. Kornreich, U.S. Bankruptcy Judge)**

_____

**Before**
**Feeney, Tester, and Bailey,**
**United States Bankruptcy Appellate Panel Judges.**

_____

**J. Scott Logan, Esq., on brief for Plaintiff-Appellant.**

**James L. Audiffred, Esq., on brief for Defendant-Appellee.**

_____

**January 3, 2011**

_____

**Bailey, U.S. Bankruptcy Appellate Panel Judge.**

Mona Lisa Knowles (the "Debtor") filed a complaint against Bayview Loan Servicing, LLC ("Bayview"), the servicer of the first mortgage on her home, alleging[1] violations of the Real Estate Settlement Procedures Act[2] and of the automatic stay and seeking to establish liability under 11 U.S.C. § 105(a) ("§ 105(a)").[3]  The bankruptcy court entered summary judgment in favor of Bayview on the RESPA count, holding that RESPA does not apply to the Debtor's loan. The court subsequently entered judgment in favor of Bayview on the automatic stay and § 105(a) counts on the grounds that Bayview's acts were not against property of the Debtor or the estate, and that Bayview did not violate § 105(a) by filing its proof of claim after confirmation of the Debtor's chapter 13 plan.  For the reasons discussed below, we **AFFIRM**.  Additionally, we **DENY** Bayview's motion for fees and costs under Bankruptcy Rule 8020.

## BACKGROUND

On November 14, 2002, the Debtor executed a note in favor of Peter and Leimomi Thompson (the "Thompsons") and granted them a first mortgage on her residence located in Strong, Maine.  On November 22, 2002, the Thompsons assigned the note and mortgage to a third party that is not a party to this case.  The record also reflects that the Thompsons assigned the note and mortgage to Wachovia Bank, N.A. ("Wachovia").  At oral argument, however, the

---

[1]  The complaint also included a count for intentional infliction of emotional distress.  The bankruptcy court granted summary judgment in favor of Bayview on this count, and the Debtor does not challenge this disposition on appeal.

[2]  All references to "RESPA" are to the Real Estate Settlement Procedures Act, as amended prior to July 21, 2010, 12 U.S.C. § 2605, et seq.

[3]  All references to the "Bankruptcy Code" or to specific sections are to the Bankruptcy Reform Act of 1978, as amended prior to April 20, 2005, 11 U.S.C. § 101, et seq.  All references to "Bankruptcy Rule" are to the Federal Rules of Bankruptcy Procedure.

2

parties clarified that the Thompsons had assigned the note and mortgage to a broker, who in turn made a further assignment to Wachovia. Bayview services the loan.

The Debtor filed a chapter 13 petition on October 16, 2005. She listed Bayview as a secured creditor holding a mortgage on her residence. On November 9, 2005, Wachovia filed a proof of claim in the amount of $9,273.39 for the pre-petition arrears[4] on the Debtor's mortgage and a total debt in the amount of $53,960.27.[5] On March 15, 2006, Wachovia filed an amended proof of claim in which it claimed pre-petition arrears of $9,398.39 and a total unpaid balance of $54,085.27.

On June 12, 2006, the bankruptcy court confirmed the Debtor's Amended Chapter 13 Plan (the "Amended Plan"). The Amended Plan provided for payments on the pre-petition arrearage to Bayview in the amount of $9,273.00.[6] The confirmation order provided that confirmation was:

> subject to (i) resolution of actions to determine the avoidability, priority, or extent of liens, (ii) resolution of all disputes over the amount and allowance of claims entitled to priority under Sec. 507, (iii) resolution of actions to determine the allowed amount of secured claims under Sec. 506, and (iv) resolution of all objections to claims.

The confirmation order also set forth procedures regarding the allowance of claims and the filing of proofs of claim or amended proofs of claim.

---

[4] In its answer to the Debtor's complaint, Bayview explained that its proof of claim contained prepetition legal fees of $2,193.15, escrow advances of $3,037.74, and property inspections of $87.50. The past due prepetition arrears equaled $4,080.00.

[5] The total debt includes the arrears.

[6] The Debtor's original plan proposed to pay $8,802.00 in arrears through the plan. Bayview objected to the Plan on the grounds that its arrears were $9,273.39. The Amended Plan reflected the higher amount.

3

In the fall of 2007, the Debtor's house was destroyed by fire. In late 2007, the Debtor received a check in the amount of $209,996.00 from the insurance company that insured the real estate. The check was made payable to several parties, including the Debtor and Bayview, payable only upon endorsement by all parties.

The Debtor received an annual tax and interest statement from Bayview dated December 31, 2007. The statement indicated a principal balance of $39,484.72 and an escrow balance of negative $3,018.26, for a total unpaid balance of $42,502.98. The statement provided "Instructions for Payer/Borrower" which explained that the information provided in the statement was "important tax information" that was "being furnished to the Internal Revenue Service." The instructions further explained the tax implications of the various balances reflected in the statement.

On February 15, 2008, the Debtor's counsel sent a payoff request to Bayview and attached to it a "Qualified Written Request," pursuant to RESPA, in which he requested detailed information on the Debtor's mortgage. On February 28, 2008, Bayview sent payoff information to the Debtor's attorney in which it stated that the Debtor owed $39,303.76 in current unpaid principal, $956.57 in interest, $10.00 in fees, $50.00 in release fees, $630.00 in legal fees, and $6,058.05 in "other funds," for a total payoff amount of $47,008.38. In the payoff statement, Bayview noted that "[p]ayoff figures have been requested on the loan for the borrower and property described below," and it described the payoff amount as the "[t]otal amount due to payoff loan in full." Additionally, Bayview explained that interest would continue to accrue daily and that the Debtor must call for updated figures "prior to remitting funds." Bayview also

4

noted that the statement did not "suspend the contract requirements to make the mortgage payment when due."

On March 12, 2008, and April 3, 2008, the Debtor's attorney sent a second and a third "Qualified Written Request" to Bayview. On April 24, 2008, Bayview sent payoff information to the Debtor's attorney, indicating a total payoff amount of $47,826.21. The second payoff statement contained the same explanatory language contained in the first statement.

The parties disagreed as to the payoff amount the Debtor owed Bayview, and the Debtor filed a motion to compel Bayview to endorse the insurance check.[7] The parties resolved the dispute with a consent order, which provided that $42,500.00 be paid to Bayview and $6,125.91 be held in escrow pending determination of any additional balance owed to Bayview.

On May 16, 2008, the Debtor filed the complaint against Bayview that gives rise to this appeal. The complaint included three relevant counts. In Count I, the Debtor sought damages for violation of RESPA. In Count II, she sought damages for violation of the automatic stay, § 362(a), contending that Bayview violated the stay by sending payoff statements that included bankruptcy charges and attorney fees that had not been authorized by the bankruptcy court and by requesting payment of these charges as a condition to its release of the Debtor's mortgage. And in Count III, entitled "Liability Pursuant to Title 11 Section 105 Generally," the Debtor alleged that Bayview was bound by its treatment under the Debtor's confirmed plan and that its attempts to collect additional funds violated § 105. In support of this count, the Debtor further argued that Bayview was not entitled to post-confirmation attorney and bankruptcy fees pursuant

---

[7] It is not clear exactly when the Debtor filed the motion to compel. In its written opinion, the bankruptcy court places it after Bayview sent the payoff statements and before the Debtor filed her complaint.

to § 506(b) or, in the alternative, if it was entitled to such fees, that it had failed to file a fee

application as required by Bankruptcy Rule 2016.

After Bayview filed an answer, the Debtor moved for summary judgment on Counts II

and III.  Bayview opposed the Debtor's motion and cross-moved for summary judgment on all

counts.  With respect to Count I, for violation of RESPA, Bayview argued that RESPA does not

apply to Bayview's loan because the loan was not a "federally related mortgage loan" as that

term is defined in RESPA.  Bayview further argued that even if RESPA applies, the Debtor's

purported "qualified written requests" did not satisfy the requirements of RESPA because the

requests were overly broad in that they did not identify a particular item in dispute.  In support of

its motion, Bayview filed a joint affidavit of the Thompsons in which they averred that they buy

and sell real estate to supplement their retirement income, that the total amount of their mortgage

loans has not exceeded $1,000,000.00, that they do not make a practice of selling their

mortgages, and that they had sold the Debtors' mortgage to a company in Texas during 2000 or

2001.

With respect to Count II, for violations of the automatic stay, Bayview argued that

§ 506(b) entitled it to collect reasonable attorneys' fees, legal expenses, and other reasonable

costs incurred in collecting on the note.  With respect to Count III, for "Liability Pursuant to

Title 11 Section 105 Generally," Bayview argued that its claim had not yet been fully

adjudicated, and that it intended to move for approval of its legal fees and costs.

The Debtor opposed Bayview's motion for summary judgment and subsequently filed a

statement of material facts.  On July 16, 2009, the bankruptcy court held a hearing at which it

granted summary judgment in favor of Bayview on Count I and denied summary judgment to

both parties on the remaining counts.  In the later memorandum of decision that accompanied the

judgment on Counts II and III, the bankruptcy court explained that it had granted summary

judgment in favor of Bayview on Count I because "the loan was originated by private

individuals and was therefore not a 'federally related mortgage loan' within the meaning of 12

U.S.C. § 2602."  The court explained:

> The issue was whether the private individuals originating the
> mortgage were "a 'creditor,' as defined in section 1602(f) of title
> 15, who makes or invests in residential real estate loans
> aggregating more than $1,000,000 per year."  12 U.S.C. §
> 2602(1)(B)(iv).  The court found that the Debtor had not met her
> burden of showing that the originators of this mortgage met the
> statutory definition.

Thereafter, the parties filed pretrial memoranda in which they reiterated and expanded

upon their arguments with respect to the remaining counts.  The bankruptcy court held a trial on

these counts and subsequently entered judgment for Bayview on both counts.[8]  In the

memorandum of decision that accompanied its decision, the bankruptcy court concluded with

respect to Count II that the filing of the proof of claim, the sending of the tax statement, and the

sending of the payoff statements did not violate the automatic stay because they were not

attempts to collect property of the estate or of the Debtor.  With respect to Count III, the

bankruptcy court concluded that the confirmation order did not prohibit Bayview from assessing

post-confirmation fees or costs.  The bankruptcy court reasoned that the order confirming the

Debtor's plan was not final because it reserved determination of claims.  The bankruptcy court

---

[8]  The Debtor did not provide transcripts of the summary judgment hearing or of the trial.  The
bankruptcy court, however, explained the basis for its decision in the opinion it issued in conjunction with
its judgment in favor of Bayview.  The appellate record, therefore, provides a sufficient basis for the
Panel to review the bankruptcy court's grant of summary judgment in favor of Bayview.  See Hamilton v.
Wells Fargo Bank, N.A. (In re Hamilton), 401 B.R. 539, 541 n.3 (B.A.P. 1st Cir. 2009).

explained that this was consistent with D. Me. LBR 3015-3(d)(3), which allows a chapter 13

debtor to postpone determination of claims until after the claims deadline has passed.  The

Debtor appealed.  Bayview has moved for fees and costs under Bankruptcy Rule 8020, arguing

that the appeal is frivolous.

## JURISDICTION

A bankruptcy appellate panel may hear appeals from "final judgments, orders and

decrees [pursuant to 28 U.S.C. § 158(a)(1)] or with leave of the court, from interlocutory orders

and decrees [pursuant to 28 U.S.C. § 158(a)(3)]."  Fleet Data Processing Corp. v. Branch (In re

Bank of New England Corp.), 218 B.R. 643, 645 (B.A.P. 1st Cir. 1998).  "A decision is final if it

'ends the litigation on the merits and leaves nothing for the court to do but execute the

judgment.'"  Id. at 646 (citations omitted).  A judgment is final where it resolves all counts on a

complaint. See Bartel v. Walsh (In re Bartel), 404 B.R. 584, 589 (B.A.P. 1st Cir. 2009); see also

Alberty-Vélez v. Corporación de Puerto Rico Para La Difusión Pública, 361 F.3d 1, 6 n.5 (1st

Cir. 2004) (explaining that partial summary judgment order is not final but is merely a pre-trial

adjudication determining certain issues which the trial court may revisit at any time prior to entry

of final judgment); Dandurand v. Unum Life Ins. Co. of Am., 284 F.3d 331, 335 (1st Cir. 2002)

(explaining that appeal of partial summary judgment ruling following entry of final judgment

was timely).  Here, the judgment is final because it left no counts unresolved, see In re Bartel,

404 B.R. at 589, and the grant of summary judgment became final upon entry of the judgment

disposing of the remaining counts.  See Dandurand, 284 F.3d at 335.

**STANDARD OF REVIEW**

The Panel reviews the bankruptcy court's findings of fact for clear error and conclusions of law *de novo*.  See Lessard v. Wilton-Lyndeborough Coop. School Dist., 592 F.3d 267, 269 (1st Cir. 2010).  The Panel reviews a bankruptcy court's grant of summary judgment *de novo*. Backlund v. Stanley-Snow (In re Stanley-Snow), 405 B.R. 11, 17 (B.A.P. 1st Cir. 2009).

**DISCUSSION**

**I. The Summary Judgment Standard**

To prevail on a motion for summary judgment, the movant must inform the trial court of "the basis for its motion, and identify[] those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  Sensing v. Outback Steakhouse of Fla., LLC, 575 F.3d 145, 152 (1st Cir. 2009) (quoting DeNovellis v. Shalala, 124 F.3d 298, 306 (1st Cir. 1997) and Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986)) (internal quotation marks omitted).  To defeat summary judgment, the nonmoving party "must come forward with facts that show a genuine issue for trial" and "may not rest upon mere allegation or denials of [the movant's] pleading, but must set forth specific facts showing that there is a genuine issue of material fact as to each issue upon which he would bear the ultimate burden of proof at trial." Id. (quoting Carroll v. Xerox Corp., 294 F.3d 231, 236 (1st Cir. 2002) and DeNovellis, 124 F.3d at 306)) (internal quotation  marks omitted).

A reviewing court should affirm a grant of summary judgment if it concludes that there is no genuine issue as to any material fact and if the prevailing party is entitled to judgment as a matter of law.  Braga v. Hodgson, 605 F.3d 58, 60 (1st Cir. 2010).  An issue is "genuine" if the evidence of record permits a rational fact finder to resolve it in favor of either party.  Borges ex

rel. S.M.B.W. v. Serrano-Isern, 605 F.3d 1, 4-5 (1st Cir. 2010). A fact is "material" if it has the

potential to change the outcome. Id.

## II. Count I: Alleged Violations of RESPA

In her complaint, the Debtor alleged that Bayview violated § 2605(e)(1)(A) and (e)(2) of

RESPA, 12 U.S.C. § 2605(e), by failing to acknowledge the receipt of three Qualified Written

Requests within 20 days and by failing to respond to two Qualified Written Requests within 60

days. Subsections 2605(e)(1)(A) and (e)(2) impose upon certain mortgage servicers the

obligations to acknowledge and respond within specified times to "qualified written requests,"

but the obligations are expressly limited to requests made with respect to "federally related

mortgage loans."[9]

The Debtor had the burden of proving that Bayview violated RESPA.[10] In re Tomasevic,

275 B.R. 103, 114 (Bankr. M.D. Fla. 2001) (borrower bears burden of persuasion as to

mortgagee's alleged violation of RESPA); Ploog v. HomeSide Lending, Inc., 2001 WL 1155288,

*7 n.14 (N.D. Ill. Sept. 28, 2001) (the burden of proving that a borrower's letter constitutes a

qualified written request is on the plaintiff borrower). The Debtor's burden included, as an

---

[9] The obligation to provide a written acknowledgment is in subsection (e)(1)(A): "If any servicer *of a federally related mortgage loan* receives a qualified written request from the borrower (or an agent of the borrower) for information relating to the servicing *of such loan*, the servicer shall provide a written response acknowledging receipt of the correspondence within 20 days . . . ." 12 U.S.C. § 2605(e)(1)(A) (emphasis added). The various obligations to respond are enumerated in subsection (e)(2) and, by the language of that subsection, triggered by the receipt of a qualified written request that conforms to subsection (e)(1): "Not later than 60 days . . . after the receipt from any borrower of any qualified written request under paragraph (1) . . . the servicer shall . . . ." 12 U.S.C. § 2605(e)(2).

[10] Citing 24 C.F.R. § 3500.2, the Debtor asserts that "[b]ecause Bayview admitted that Knowles sent documents purporting to be QWRs [qualified written requests], Bayview was required to establish that the loan is not a 'federally related mortgage loan.'" The Debtor, however, has not cited specific language from the regulation or otherwise explained how the regulation supports her position on burden of proof. We find nothing in the language of the regulation to support her position or that even addresses the issue of burden of proof. See 24 C.F.R. § 3500.2.

essential element of her cause of action, proof that her loan was a federally related mortgage loan. Bayview's request for summary judgment did not relieve the Debtor of this burden. Where, as here, the moving party would not bear the burden of proof at trial, the movant's initial burden is only to demonstrate or point out a lack of evidence to support at least one essential element of the opposing party's case. Celotex Corp. v. Catrett, 477 U.S. 317, 322-23 (1986). The burden then shifts to the opposing party, the party who would bear the burden of proof at trial, to adduce such evidence on each of the disputed elements as at trial would be sufficient to withstand a motion for directed verdict. Anderson v Liberty Lobby, Inc., 477 U.S. 242, 250 (1986).

The bankruptcy court concluded that RESPA did not apply because the loan was not a "federally related mortgage loan" within the meaning of 12 U.S.C. § 2602. The term "federally related mortgage loan," as used in 12 U.S.C. § 2605(e), is defined by statute at 12 U.S.C. § 2602.[11] The definition has two prongs and requires satisfaction of both. Bayview does not

---

[11] In relevant part, 12 U.S.C. § 2602 states:

For purposes of this chapter–

(1) the term "federally related mortgage loan" includes any loan (other than temporary financing such as a construction loan) which–

    (A)     is secured by a first or subordinate lien on residential real property (including individual units of condominiums and cooperatives) designed principally for the occupancy of from one to four families, including any such secured loan, the proceeds of which are used to prepay or pay off an existing loan secured by the same property; and

    (B)     (I) is made in whole or in part by any lender the deposits or accounts of which are insured by any agency of the Federal Government, or is made in whole or in part by any lender which is regulated by any agency of the Federal Government, or

         (ii) is made in whole or in part, or insured, guaranteed, supplemented, or

11

dispute that the mortgage loan satisfies the first, the loan being secured by a first mortgage on the

real property that is the Debtor's single-family residence.  Only the second prong is at issue.

In its motion for summary judgment, Bayview argued that summary judgment should

enter on the RESPA count because the Debtor's mortgage did not meet any of the four statutory,

second-prong alternatives in § 2602(1)(B).  Bayview adduced evidence in support of its position

as to one of the four alternatives.  Specifically, with respect to § 2602(1)(B)(iv), Bayview

adduced evidence that the Debtor's mortgage originated as a private mortgage and that the

Thompsons did not make or invest in residential real estate loans aggregating more than

$1,000,000.00 per year.[12]  The motion, however, was not limited in scope to § 2602(1)(B)(iv).  In

the motion, Bayview contended that the loan was not a federally related mortgage loan *under*

*any definition*:  "this mortgage does not meet any of the four statutory definitions provided in the

---

assisted in any way, by the Secretary or any other officer or agency of
the Federal Government or under or in connection with a housing or
urban development program administered by the Secretary or a housing
or related program administered by any other such officer or agency; or

(iii) is intended to be sold by the originating lender to the Federal
National Mortgage Association, the Government National Mortgage
Association, the Federal Home Loan Mortgage Corporation, or a
financial institution from which it is to be purchased by the Federal
Home Loan Mortgage Corporation; or

(iv) is made in whole or in part by any "creditor", as defined in section
1602(f) of Title 15, who makes or invests in residential real estate loans
aggregating more than $1,000,000 per year, except that for the purpose
of this chapter, the term "creditor" does not include any agency or
instrumentality of any State[.]

12 U.S.C. § 2602(1).

[12]  The bankruptcy court concluded that the loan did not meet the 12 U.S.C. § 2602(1)(B)(iv)
definition of federally related mortgage loan, and the Debtor does not now challenge that determination
on appeal.

12

second prong." According to Bayview, there was no evidence to support an essential element of the Debtor's case. In order to avert entry of summary judgment on this count, the Debtor was therefore required to adduce evidence to establish a genuine issue of material fact as to whether the loan qualified as a federally related mortgage loan under at least one of the available definitions.

The bankruptcy judge entered summary judgment on this count on the strength of his determination that the loan was not a federally related mortgage loan. The Debtor contends that this was error for a number of reasons.

First, we reject the Debtor's argument that "Bayview failed to refute the allegation that either Wachovia, or itself, is insured, guaranteed, supplemented or assisted in any way by an agency of the Federal government." This argument is an attempt to bring the loan within 12 U.S.C. § 2602(1)(B)(ii), under which a loan is a federally related mortgage loan if it is "insured, guaranteed, supplemented, or assisted in any way" by an agency of the federal government. 12 U.S.C. § 2602(1)(B)(ii). This argument fails for three reasons. First, as explained above, the Debtor, not Bayview, bore the burden of proof on the issue. Second, we cannot find in the record that the Debtor ever did allege, either in his complaint or in his response to Bayview's motion for summary judgment, that the loan was federally related as defined in 12 U.S.C. § 2602(1)(B)(ii). Third, and more importantly, in response to the motion for summary judgment, the Debtor adduced no evidence on this issue at all.[13]

---

[13] On appeal, the Debtor cites for the first time evidence that Bayview and Wachovia accepted funding from the Troubled Asset Relief Program, and therefore they were "assisted" by the federal government; they argue that this brings the Debtor's loan within 12 U.S.C. § 2602(1)(B)(ii). We need not consider this argument because the Debtor waived it by failing to raise it below. See Carreras v. Sajo, Garcia & Partners, 596 F.3d 25, 32 n.5 (1st Cir. 2010).

Second, we reject the Debtor's argument that because the loan was sold so quickly, just eight days after its origination, there existed a genuine issue of material fact as to whether the loan was intended to be sold by the originating lenders.  This argument is an attempt to bring the loan within 12 U.S.C. § 2602(1)(B)(iii), under which a loan is a federally related mortgage loan if it is "intended to be sold by the originating lender to the Federal National Mortgage Association, the Government National Mortgage Association, the Federal Home Loan Mortgage Corporation, or a financial institution from which it is to be purchased by the Federal Home Loan Mortgage Corporation."  The argument fails because the Debtor introduced no evidence below that the originators intended to sell the loan to any of the identified entities: FNMA, GNMA, FHLMC, or a financial institution from which it is to be purchased by FHLMC.  The eight-day turnaround time cannot by itself demonstrate intent to sell *to these entities*.

Third, we reject the Debtor's argument that "RESPA makes specific reference to loan servicers.  It requires servicers to respond to qualified written requests. 12 U.S.C. § 2605(e)." This two-sentence argument appears to contend that RESPA applies to any mortgage servicer, regardless of whether the loan in question is a federally related mortgage loan. The argument is waived because it was not raised below.  It is also refuted by the language of the statute, which begins:  "If any servicer *of a federally related mortgage loan* receives a qualified written request . . . the servicer shall . . . ."  12 U.S.C. § 2605(e)(1)(A) (emphasis added).  As explained above, the provisions in question apply not to servicers in general but to servicers of federally related mortgage loans, and the Debtor was obligated to prove that in servicing its loan, Bayview was servicing a federally related mortgage loan.

14

Fourth, we reject the Debtor's argument that there existed a genuine issue of material fact as to whether "the loan was originated by a dealer or a mortgage broker and intended to be assigned to an entity subject to one of the first four criteria."  The Debtor does not elaborate on this argument and fails to cite even a statutory or other basis on which this argument, if supported with evidence, might qualify the loan as federally related.  For this reason, we decline to consider the argument on appeal.  The argument further fails because, in her opposition to the motion for summary judgment, the Debtor adduced no evidence in support of it.

For these reasons, we conclude that there were no genuine issues of material fact and that the bankruptcy judge correctly granted summary judgment as to the RESPA count.

## III.  Count II:  Alleged Violations of the Automatic Stay

The automatic stay is effective upon the filing of the bankruptcy petition and serves to prevent creditors from acting against property of the debtor or property of the estate without leave from the bankruptcy court to do so.  See 11 U.S.C. § 362.  The automatic stay is "extremely broad in scope" in that it prohibits almost all formal and informal acts taken against the debtor or the estate.  Lawrence P. King et al., Collier on Bankruptcy ¶ 362.03 (15th ed. rev. 2007).  The stay, however, does not prohibit all communication or actions by a creditor to a debtor.  Morgan Guar. Trust Co. of N.Y. v. Am. Sav. & Loan Ass'n (In re Morgan Guar. Trust Co. of N.Y.), 804 F.2d 1487, 1491 (9th Cir. 1986).  For instance, a "mere request for payment" does not violate the stay unless it is coercive or harassing.  Id.  Likewise, an act does not violate the stay unless it immediately or potentially threatens the debtor's possession of its property, such that the debtor is required to take affirmative acts to protect its interest.  Id.

15

Here, the Debtor argues that Bayview violated the automatic stay through the following

three acts:  filing a proof of claim, sending the annual tax statement, and sending the payoff

statements.  We examine these assertions in order and determine that none of them states a basis

for finding a violation of the stay.

First, the filing of the proof of claim is not an act against property of the debtor or the

estate.  See 11 U.S.C. § 362; Campbell v. Countrywide Home Loans, Inc. (In re Campbell), 545

F.3d 348, 355-56 (5th Cir. 2008) (holding that automatic stay did not bar creditor from filing

proof of claim); Zotow v. Johnson (In re Zotow), 432 B.R. 252, 261 (B.A.P. 9th Cir. 2010)

(explaining that automatic stay "serves to control creditor action by encouraging creditors to

participate in the bankruptcy process to resolve their claims").  As the bankruptcy court noted,

the filing of a proof of claim merely indicates a desire to participate in the bankruptcy process.

See In re Campbell, 545 F.3d at 355-56.  It is not a request for payment from the debtor or an

attempt to act against property of the debtor.  It is certainly an act against property of the

estate—one files a proof of claim in order to recover from the estate—but one the Code

expressly sanctions: "[a] creditor . . . may file a proof of claim."  11 U.S.C. § 501(a).  To the

extent the Debtor disputed the reasonableness of certain charges and fees, she was free to object

to the claim.[14]  See id.

Similarly, the sending of the annual tax statement was not an act against property of the

Debtor or the estate.  See 11 U.S.C. § 362; In re Morgan, 804 F.2d at 1491; In re Zotow, 432

---

[14]  On November 27, 2009, Bayview filed an application for legal fees and costs in which it
sought $5,805.00 in fees and $1,010.99 in costs, for a total of $6,815.99.  The application was still
pending at the time the appeal was filed, because the parties had agreed to postpone determination of the
application until after resolution of the adversary proceeding.  At oral argument, the parties represented
that the court has since approved the fees, and therefore, the amount is no longer in question.

16

B.R. at 261.  The statement was merely an informative document sent in the normal course of

business that contained data the Debtor needed in order to prepare her tax return.  Because

nothing in the statement can be construed as an attempt by Bayview to seek payment from the

Debtor, Bayview's sending it was not violative of the stay.  See 11 U.S.C. § 362; In re Morgan,

804 F.2d at 1491; In re Zotow, 432 B.R. at 261.

Nor was Bayview's transmission of the payoff statements an act against property of the

Debtor or the estate.  See 11 U.S.C. § 362; In re Morgan, 804 F.2d at 1491; In re Zotow, 432

B.R. at 261.  The Debtor in fact requested the payoff information, and Bayview noted in both

statements that it was providing the information pursuant to that request.  Additionally, both

statements contained language making it clear that the Debtor was not immediately obligated to

pay anything beyond her normal mortgage payment and that the "total amount due" was only if

the Debtor opted to pay off the loan in full.  Additionally, the fact that these fees were omitted

from the proof of claim "[does] not constitute the sort of overt, affirmative act stayed by

§ 362(a)."  Mann v. Chase Manhattan Mortgage Corp. (In re Mann), 316 F.3d 1, 6 (1st Cir.

2003).  As nothing in the statements can be construed as an attempt by Bayview to seek payment

from the Debtor, Bayview's sending them did not violate the stay.  See 11 U.S.C. § 362; In re

Morgan, 804 F.2d at 1491; In re Zotow, 432 B.R. at 261.

The Debtor argues that the bankruptcy court "went no further than to determine Bayview

had a right to seek those fees under Section 506" and that the bankruptcy court "erred in failing

to analyze whether Bayview sought those fees improperly."[15]  This is a misstatement of the

---

[15]  Additionally, the Debtor argues that Bayview and Wachovia are bound by their treatment under the Amended Plan.  However, this argument pertains to the question of whether Bayview violated § 105, not whether Bayview violated the automatic stay.

17

bankruptcy court's conclusion. What the bankruptcy court in fact concluded was that Bayview had not sought to collect any fees outside the bankruptcy process. That is, the bankruptcy court concluded that Bayview had not acted against property of the Debtor or the estate by sending the annual tax statement or payoff statement or by filing a proof of claim. With respect to allegations of a stay violation, the question is not whether certain fees are proper, but whether the creditor acted against property of the Debtor or the estate. See 11 U.S.C. § 362; In re Morgan, 804 F.2d at 1491; In re Zotow, 432 B.R. at 261. As there is no evidence indicating that Bayview did so, the bankruptcy court did not err in concluding that Bayview did not violate the automatic stay.

## IV. Count III: Alleged Violations of § 105 Generally

In Count III, the Debtor sought damages for an alleged "violation of § 105(a)." As a preliminary matter, we note that § 105(a)[16] does not proscribe any conduct and therefore cannot be violated. Rather, it merely empowers the bankruptcy court to "issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of [the Bankruptcy Code]." 11 U.S.C. § 105(a). Consequently, we understand the Debtor to be arguing not that the Bayview has violated § 105(a) but that it has committed certain acts, resulting in injury to the Debtor, for which the court may and should, pursuant to the authority granted in § 105(a), fashion relief.

---

[16] Section 105(a) provides that

The court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title. No provision of this title providing for the raising of an issue by a party in interest shall be construed to preclude the court from, sua sponte, taking any action or making any determination necessary or appropriate to enforce or implement court orders or rules, or to prevent an abuse of process.

Section 105(a) gives a bankruptcy court broad authority to "exercise its equitable powers—where 'necessary' or 'appropriate'—to facilitate the implementation of other Bankruptcy Code provisions." <u>Ameriquest Mortgage Co. v. Nosek (In re Nosek)</u>, 544 F.3d 34, 43 (1st Cir. 2008). It functions, therefore, as a "catch-all" provision, effectively filling in gaps to "preserve the integrity of the bankruptcy system." <u>Cuevas-Segarra v. Contreras</u>, 134 F.3d 458, 459 (1st Cir. 1998). Despite this broad language, there are "important limitations" on a bankruptcy court's authority to act pursuant to § 105(a). <u>In re Nosek</u>, 544 F.3d at 43. Notably, a bankruptcy court may not apply § 105(a) in a manner that is inconsistent with another provision of the Bankruptcy Code. <u>Id.</u>

Section 506(b)[17] entitles secured creditors to post-petition interest, fees, and costs to the extent the claim is oversecured. <u>See</u> 11 U.S.C. § 506(b); <u>Burrell v. Town of Marion (In re Burrell)</u>, 346 B.R. 561, 568 (B.A.P. 1st Cir. 2006). Bankruptcy Rule 2016(a)[18] sets forth the

---

[17] Section 506(b) provides that

To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose.

[18] Bankruptcy Rule 2016(a) provides that

An entity seeking interim or final compensation for services, or reimbursement of necessary expenses, from the estate shall file an application setting forth a detailed statement of (1) the services rendered, time expended and expenses incurred, and (2) the amounts requested. An application for compensation shall include a statement as to what payments have theretofore been made or promised to the applicant for services rendered or to be rendered in any capacity whatsoever in connection with the case, the source of the compensation so paid or promised, whether any compensation previously received has been shared and whether an agreement or understanding exists between the applicant and any other entity for the sharing of compensation received or to be received for services rendered in or in connection with the case, and the particulars of any sharing of compensation or agreement or understanding therefor, except that details of any

procedure by which an entity can apply for compensation or reimbursement of expenses.  See

Fed. R. Bankr. P. 2016(a).  Generally, the provisions of a confirmed chapter 13 plan bind the

parties and establish a creditor's treatment.  Torres Martinez v. Rivera Arce (In re Torres

Martinez), 397 B.R. 158, 165 (B.A.P. 1st Cir. 2008).  However, a confirmed plan is not binding

on a creditor whose treatment is not clearly determined under the plan.  Piedmont Trust Bank v.

Linkous (In re Linkous), 990 F.2d 160, 162-63 (4th Cir. 1993) (confirmation order is not

preclusive as to issue of valuation and quantification of secured claim where secured creditor,

though given notice of the confirmation hearing, was afforded no notice that court would hold a

hearing on valuation); see also Brawders v. County of Ventura (In re Brawders), 503 F.3d 856,

867-68 (9th Cir. 2007) (chapter 13 plan that does not clearly state its intended effect on a given

issue may have no res judicata effect on that issue); In re Joyce E. Greene-Jackson, Case No. 00-

14423 (Bankr. D. Mass. March 30, 2001) (where mortgagee was not afforded adequate notice by

chapter 13 plan that plan would quantify the mortgagee's arrearage claim, the confirmation order

was not preclusive as to the amount of that claim); K. Lundin, Chapter 13 Bankruptcy § 233.1

(3d ed. 2000) (explaining that binding effect of confirmed chapter 13 plan is limited by "[b]ad

plans, bad notices and confirmations that fall short of the due process prescribed elsewhere in the

Code and Rules").  Particularly problematic is the procedure for the allowance and disallowance

of claims, which is "[s]eparate from, if not parallel to, confirmation."  Id.  That is, a "tension"

---

agreement by the applicant for the sharing of compensation as a member or regular
associate of a firm of lawyers or accountants shall not be required.  The requirements of
this subdivision shall apply to an application for compensation for services rendered by
an attorney or accountant even though the application is filed by a creditor or other entity.
Unless the case is a chapter 9 municipality case, the applicant shall transmit to the United
States trustee a copy of the application.

arises where a creditor's treatment under a confirmed plan differs from an allowed claim filed by creditor.  Id.

In Maine, Local Rule 3015-3(d)(3)[19] serves to alleviate this tension by allowing chapter 13 debtors to reserve determination of claims until after the claims deadline has passed.  See D. Me. LBR 3015-3(d)(3).  Therefore, a plan that expressly postpones claims determinations under D. Me. LBR 3015-3(d)(3) provides ample notice to creditors that their treatment has not been finally determined.[20]  See id.  Here, the Amended Plan expressly reserved determination of claims in accordance with D. Me. LBR 3015-3(d)(3).  Claims can be determined through an objection to claim, a motion to allow or disallow a claim, or an application for fees.  The Amended Plan, therefore, did not have a binding effect on Bayview's claim.

The Debtor contends that Bayview violated § 105 by attempting to "impose its own modification" on the Amended Plan by seeking pre- and post-confirmation fees and costs.  However, Bayview's attempt to recover certain pre- and post-petition costs and fees was not a unilateral effort to modify the Amended Plan.  First, the bankruptcy court must adjudicate the fee application, and therefore any changes to Bayview's treatment would be court-sanctioned.

---

[19]  Maine Local Bankruptcy Rule 3015-3(d)(3) provides:

Allowance and Payment of Claims.  The trustee may pay allowed secured and priority claims as filed pursuant to a confirmed plan unless an objection to such claim is pending.  After the last date for filing claims, the debtor or the trustee shall file a motion to allow and disallow claims.  Such motion may also address objections to claims, priority of claims, the avoidability of liens, and any other matter which may be raised pursuant to statute or rule.  Payment of general unsecured claims shall be made only after the order allowing and disallowing claims except as otherwise authorized by order of Court.  The motion(s) and order(s) shall comport with Maine Bankruptcy Forms 3 and 4 in substance and in form.

[20]  The Panel need not consider whether the confirmation order must expressly reserve the determination of claims in order to postpone the determination of claims under D. Me. LBR 3015-3(d)(3).

Second, a change in Bayview's treatment would not be a modification of the Amended Plan. The confirmation order expressly reserved the determination of claims until after the claims deadline passed. Therefore, any change to the amount Bayview receives would be in accordance with—not in conflict with—the terms of the Amended Plan.

The Debtor further contends that, even if D. Me. LBR 3015-3(d)(3) generally allows for the postponing of claims determination until after the claims deadline has passed, in this case Bayview's treatment was determined under the Amended Plan because Bayview had participated in the confirmation process. Specifically, Bayview objected to its treatment under the Plan, and later withdrew its objection after reaching an agreement with the Debtor, as reflected in the Amended Plan. We reject these arguments, however, as there is nothing in the text of D. Me. LBR 3015-3(d)(3) to support them. See D. Me. LBR 3015-3(d)(3).

Lastly, the Debtor's reliance on Sanchez v. Ameriquest Mortgage Co. (In re Sanchez), 372 B.R. 289 (Bankr. S.D. Tex. 2007), is misplaced. In In re Sanchez, the bankruptcy court held that the lender had violated the confirmation order by sending a forbearance agreement to the debtor that purported to change the debtor's obligations under the confirmed plan. Id. at 317-18. As an initial matter, In re Sanchez is not binding precedent in this circuit. More importantly, the case is distinguishable from the case before us. Indeed, in that case the lender assessed post-petition charges "without giving notice to the debtor and without seeking court approval." Id. In In re Sanchez, the lender never disclosed the additional fees during the bankruptcy process. Id. Consequently, its effort to change the amounts due to it under the plan was not subject to the claims assessment process before the court. See 11 U.S.C. § 506(a) and Bankruptcy Rule 2016. That is simply not the case here. Bayview filed its proof of claim and sought its allowance

22

through appropriate court procedures.  Even if we were inclined to adopt the rulings in <u>In re</u>

<u>Sanchez</u>, which we specifically do not embrace here, those rulings have no application on the

facts presented in this case.

## V.  Motion for Fees and Costs

Under Bankruptcy Rule 8020,[21] the Panel may award an appellee costs and fees if it

determines that the procedural requirements of the rule are satisfied and that the appeal is

frivolous.  <u>See</u> Fed. R. Bankr. P. 8020; <u>Lumb v. Cimenian (In re Lumb)</u>, 401 B.R. 1, 9 (B.A.P.

1st Cir. 2009); <u>Maloni v. Fairway Wholesale Corp. (In re Maloni)</u>, 282 B.R. 727, 734 (B.A.P. 1st

Cir. 2002).  Procedurally, the appellee must file a separate motion and the appellant must be

given an opportunity to respond.  <u>Id.</u>  Here, Bayview satisfied the procedural requirement by

filing a separate motion, to which the Debtor has objected.

There is no formula for determining if an appeal is frivolous.  <u>Id.</u>  Factors to be

considered include the following:  whether the appellant filed the appeal in bad faith; whether

the argument is meritless *in toto* or only partially without merit; whether the argument properly

addresses the issues on appeal; and whether the appellant supports the argument with proper and

applicable authority or simply asserts unsubstantiated facts or bare legal conclusions.  <u>In re</u>

<u>Maloni</u>, 282 B.R. at 734.  Although the Debtor did not prevail on this appeal, the appeal was not

frivolous.  <u>See</u> <u>id.</u>  The Debtor asserted legitimate arguments and provided support for them.  For

these reasons, costs and fees pursuant to Bankruptcy Rule 8020 are not appropriate.  <u>See</u> <u>id.</u>

---

[21]  Bankruptcy Rule 8020 provides as follows:

If a court of appeals determines that an appeal is frivolous, it may, after a separately filed
motion or notice from the court and reasonable opportunity to respond, award just
damages and single or double costs to the appellee.

## <u>CONCLUSION</u>

For the reasons discussed above, we **AFFIRM** the bankruptcy court's decision.  We

**DENY** Bayview's request for fees and costs under Bankruptcy Rule 8020.